UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60238-CR-ZLOCH/Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISHWADE SUBRAN, et al.,

    Defendants.
_____

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on defendant **Patrick Aiken's** Motion to Dismiss (DE 122), adopted by defendant **Ishwade Subran**, which was referred to United States Magistrate Judge, Lurana S. Snow, for report and recommendation.

The defendants are charged with conspiracy to obstruct commerce by means of robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); conspiracy and attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Counts 2 and 3); conspiracy to use and carry a firearm during the commission of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count 4); using and carrying a firearm during the commission of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 5), and possession of firearms as convicted felons, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 6). They argue that the indictment against them must be dismissed because the Government, by ordering the confidential informant to "self-deport," caused the

informant to be unavailable to testify in support of their defense of entrapment.

An evidentiary hearing was held on the motion on March 18, 2008.

## I. **PROCEDURAL HISTORY**

The instant indictment was returned on October 3, 2007. The defendants were arraigned on October 4, 2007, at which time the Standing Discovery Order was entered and the deadline for filing pretrial motions was set for November 1, 2007. (DEs 24-40) The case was set for trial during the calendar period commencing November 13, 2007. (DE 41) The Government timely filed its Response to the Standing Discovery Order on October 19, 2007. (DE 45) That same day, this Court granted defendant Wade Parker's Motion to Continue Trial, and the trial of this cause was reset for the calendar period commencing January 28, 2008. (DEs 43-44)

On October 23, 2007, counsel for defendant Subran filed a Motion for Disclosure of Evidence Concerning Confidential Informants (DE 57), which was referred to the undersigned. That motion recited that the confidential informant introduced Subran to an undercover agent "after months of entreaties by the confidential informant to commit illegal acts for money," and that the informant "knew of specific family and financial difficulties Defendant faced and capitalized on them by involving him this offense." (DE 57 at 4)

In its response, the Government stated that the informant's role was limited to introducing the defendant to undercover agents, after which the informant was merely an

observer. The Government also pointed out that defendant Subran was captured on seven audio and video tapes, during which he discussed robbing a stash house of fifteen to thirty kilograms of cocaine. Finallly, the Government indicated that the informant would not be called as a prosecution witness. (DE 67)

On December 14, 2007, the undersigned entered an Order granting the Motion in part. The Government was directed to inquire of the informant whether he or she wished to speak with counsel for the defendant and, if the informant was willing, to make arrangements for an interview. The Government also was directed to produce the informant at time of trial if the defendant wished to call him or her as a witness. The request to disclose the name and address of the informant was denied. (DE 70)

No appeal was taken of this Order. However, more than one month after the entry of the Order, defendant Subran filed a Motion for Reconsideration of the Order. (DE 71) A hearing was set held on this Motion on January 31, 2008. Since the Government voluntarily provided the name of the confidential informant, the Motion for Reconsideration was denied, and no appeal was taken. (DE 106)

Meanwhile, on January 25, 2008, this Court granted joint motions to continue the trial, and the trial of this cause was specially set for February 12, 2008. (DE 96) On February 7, 2008, defendant Patrick Aiken filed a Motion to Appoint Counsel based on the defendant's dissatisfaction with the Assistant Federal Public Defender assigned to represent him. (DE 108) Counsel for defendant Aiken stated that her relationship with the defendant had deteriorated beyond repair, and new counsel was appointed.

3

Once again, the trial was continued and was specially set for March 24, 2008. (DE 118) The instant Motion to Dismiss was filed by substitute counsel for defendant Aiken March 12, 2008.

## II. **FACTS PRESENTED**

The sole witness to testify at the evidentiary hearing on the Motion to Dismiss was Broward Sheriff's Office Detective Jason Hendrick, who was called by defendant Aiken. Detective Hendrick testified that he controlled and supervised Langford Jackto, the confidential informant in this case. The detective stated that he and DEA Special Agent Steve McKean had worked with Jackto on several cases, and that Jackto had been a very reliable informant. Detective Hendrick related that Jackto had been paid by Agent McKean for his participation in the instant case, but the detective did not know the amount of the payment.

Detective Hendrick testified that Jackto had been arrested on state charges, and was sentenced by Circuit Judge Stanton Kaplan on August 1, 2007. Detective Hendrick stayed outside the courtroom during the sentencing hearing, but remained available if the judge had questions for him. The detective stated that Judge Kaplan always informs defendants that if they are illegally in the United States, they will be deported. Detective Hendrick later learned that Jackto had been advised by Immigration officials that he had a choice between formal deportation, which would be reflected on Jackto's permanent record, and voluntary departure. Jackto told Detective Hendrick that he was leaning toward self-deportation because he did not want to be incarcerated at Krome Detention Center and wanted to avoid being labeled a deportee.

4

Detective Hendrick stated that the investigation which gave rise to the instant indictment began on August 20, 2007, when Jackto first told police about Subran. The detective understood that Jackto had been incarcerated with Subran, and that conversations regarding Subran's interest in participating in home invasion robberies had taken place while both men were in jail. Detective Hendrick was not aware of any meeting between the two men outside of jail that had not been tape recorded. However, he conceded that some conversation had to have taken place to arrange the first meeting between Subran, Jackto and the undercover agent, which was set for August 24, 2008.

The detective stated that there had been no mention of Aiken prior to the August 24 meeting. Detective Hendrick's notes reflect that "an unknown black male" (subsequently identified as Aiken) came to the meeting with Subran. The detective did not believe that the transcript of that meeting, during which Subran told Agent McKean that "we wanted to get the full details from you," indicates that Aiken had met with Jackto and Subran on a prior occasion. (Defendant Aiken's Exhibit 2.) The investigation concluded on September 19, 2007, when the defendants were arrested.

Detective Hendrick testified that Jackto's probation officer had called him to verify that Jackto was working with the police. Detective Hendrick told the probation officer that Jackto had been informed by Immigration authorities that he would be deported on a certain date if he did not self-deport.

Detective Hendrick was not aware that the probation officer's affidavit in support of an arrest warrant for Jackto issued on November 7, 2007, stated that Jackto had failed to comply

5

with lawful instructions given to him by the probation officer because

> on September 5, 2007, the offender was instructed to self-deport to the country of Jamaica on October 4, 2007, due to an ongoing investigation and the offender did fail to carry out this instruction by Detective Jason Hendrick . . . as told to this Officer by Detective Jason Hendrick on October 8, 2007.

(Defendant Aiken's Exhibit 1, Violation II.)

The detective did not know that his name had been mentioned in the warrant or that the probation officer had ordered Jackto to self-deport. He was aware that a warrant had been issued for Jackto's arrest for violation of probation and that it was based on Jackto's moving from his last known residence without the consent of his probation officer. (Defendant Aiken's Exhibit 1, Violation I.)

Detective Hendrick explained that on October 3, 2008, he learned for the first time that Jackto planned to self-deport the following day. Jackto showed him an airline ticket to Jamaica that he had purchased for travel on October 4, 2008. The detective went to Jackto's house at 8:45 a.m. on October 4, and ascertained that Jackto was not there. Subsequently, Detective Hendrick learned that Jackto had not taken the scheduled flight to Jamaica and that to date, Jackto's whereabouts are unknown.

### III. RECOMMENDATIONS OF LAW

Defendants Aiken and Subran contend that the Government's order that Jackto "self-deport" has prevented them from calling a favorable witness, thereby violating the Fifth and Sixth Amendment rights. The motion recites that Jackto "approached Mr. Aiken to 'offer' the opportunity to make allot [sic] of easy money with

little to no risk, and then once Mr. Aiken was induced, introduced Mr. Aiken and the other defendants to undercover Special Agent Steve McKean on August 24, 2007." (Motion to Dismiss at 1-2) At the hearing, counsel for Aiken proffered that Jackto told Aiken that the robbery was going to be much easier than Agent McKean would describe it, but that Aiken should simply go along with Agent McKean.

The defendants rely on United States v. Valenquela-Bernal, 458 U.S. 858, 874 (1982), which held that dismissal of an indictment for deportation of alien witnesses is warranted "only if there is a reasonable likelihood that the testimony could have affected the judgment of a trier of fact." The defendants also cite United States v. Saintil, 753 F.2d 984, 987 (11th Cir. 1983) and United States v. Schaefer, 709 F.2d 1383, 1386 (11th Cir. 1983).

In Saintil, the defense sought to call two alien witnesses, one of whom had been deported, and another who could not be located in INS records. The court noted:

> To prove a violation of a defendant's constitutional rights resulting from the government's deportation of a witness, a defendant "must show some reasonable basis to believe that the deported witness would testify to material and favorable fact." United States v. Schaefer, 709 F.2d 1383, 1386 (11th Cir. 1983); see United States v. Valezuela-Bernal, 458 U.S. 858, 867-62, 102 S.Ct. 3440, 3446-49, 73 L.Ed. 2d 1192 (1982).

Saintil, 753 F.2d at 987.

As in the instant case, the record in Saintil reflected that the missing witnesses had been given the option of voluntarily returning to their home country in order to avoid detention in the United States. The court observed that there was no reason to believe that was not what had occurred. Id. at n.3.

7

The <u>Saintil</u> court cited two reasons for its finding that the appellants had failed to make the showing required to demonstrate a constitutional violation:

> First, the record does not show that the government actually deported or sent away the witnesses claimed to be material. Second, there has not been the slightest indication that the testimony of Joseph and Silus would be either material or favorable to the appellants. . . . It is true that the appellants sought to charge the missing witnesses with the commission of the crime, but there is nothing to indicate that these witnesses would, as if in a "Perry Mason" rerun, confess on the witness stand that they were, indeed, the criminals. It is highly likely that the testimony of these witnesses would merely be repetitive . . . .

<u>Id.</u>

In <u>Schaefer</u>, <u>supra</u>, the court held that the defendant had failed to give any basis for the contention that a deported witness would have provided favorable and material testimony. <u>Schaefer</u>, 709 F.2d at 1386-87. In so holding, the court acknowledged that a defendant cannot show exactly what a deported witness would say, and that the showing of materiality required of the defendant must be relaxed since the government is responsible for the defendant's lack of access to a deported witness. <u>Id.</u> at 1386. Nevertheless, a defendant "cannot simply hypothesize the most helpful testimony the deported witness could provide," but instead "must show some reasonable basis to believe that the deported witness would testify to material and favorable facts." <u>Id.</u> (citations omitted).

In the instant case, the testimony demonstrates that the Government did <u>not</u> deport Jackto and, moreover, that Jackto apparently never left the United States. Additionally, neither defendant Aiken nor defendant Subran has offered any proof that the

8

Jackto would testify that he used impermissible tactics to induce the defendants to involve themselves in crimes they otherwise would not have committed.[1] The undersigned finds, as did the court in Saintil, that it is highly unlikely that Jackto would confess to any wrongdoing while on the witness stand. Instead, his testimony likely would amount to a duplication the recorded conversations and the testimony of Agent McKean.

Accordingly, the defendants have failed to meet their burden of showing that the Government is responsible for Jackto's unavailability and that his testimony would be both material and favorable to the defense. Therefore, there is no basis for dismissal of the indictment in this case.

## CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that defendant **Patrick Aiken's** Motion to Dismiss (DE 122), adopted by defendant **Ishwade Subran** be DENIED.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 20th day of March, 2008.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
AUSA Bruce Brown (FTL)
Richard Della Fera, Esq.
Marshall Louis, Esq.
Ivan Mercado, Esq.
Steven Kassner, Esq.

---

[1] The Schaefer court pointed out that the required showing that the lost evidence would be both material and favorable to the defense must be evaluated in light of the fact that the defendant typically knows the facts and has the option of testifying in support of a motion to dismiss. Schaefer, 709 F.3d at 1386.